Judges of the United States Court of Appeals for the Second Circuit, hear ye, hear ye, hear ye. All persons having business before this, a stated term of the United States Court of Appeals for the Second Circuit, draw near, give your attention, and ye shall be heard. Good morning, this is Judge Kastman, and with me are Judges Newman and Bianco. We have three and Shaheed v. Krosky. A fourth case, Kramer v. State of Connecticut, is on submission. We will now hear the first case. Good morning, Your Honors. I'm Aaron Herzig on behalf of Appellant Heung-Jin or Sean Moon. I'd like to reserve two minutes for rebuttal today. Thank you. May it please the Court, this is another chapter in the long-running dispute within the Moon family over who controls the property and corporate entities of Reverend Moon. Many members of the family have asked courts in the United States to help resolve these issues. Unlike the other courts in which litigation is presently proceeding, the court below has refused to even begin to wade in. The court decided at the earliest stage in litigation that because the property dispute involves control of the corporate entity that oversees the Unification Church, called the Family Federation, the court must abstain. The trial court found that it would be infringing on the defendant's religious liberty if it were to allow this case to even proceed to discovery. In doing so, it has given blanket immunity to the actions of the defendants. The court dismissed all claims against all parties. So because this case involves a church, the defendants have unfettered ability to remove Sean as the leader of the Family Federation Corporation. They can defraud the Family Federation or waste its assets or unlawfully enrich themselves at its expense, and no one can do anything about it. That's not the law. The defendant's religious liberty is not being infringed in a lawsuit about whether they abused their secular corporate powers or stole from the corporation or even the church. The district court misapplied the ecclesiastical abstention doctrine, because even the cases that establish the doctrine make clear that it is not a license to steal from a religious organization. It can only abstain if its jurisdiction would interfere with the religious liberty of the parties. It doesn't here. How can we tell? First, the court is not being asked to interpret the religious text or dogma. It's not being asked to interpret religious doctrine or religious processes. It's not being asked to second guess the decision of a religious authority or court. Second, the action that Mrs. Moon took to try to oust Sean were corporate actions. They took votes. They forced his resignation with a letter. And Sean alleges that they retaliated against him for uncovering their misdeeds, a violation of New York state law. These are all things that the court can decide under neutral principles of law. None of them require the court to determine who is right in the religious context of the unification church. I'm not. This is Judge Katzman. Could you help me understand what those neutral principles are by which we can adjudicate these claims? Yes, Your Honor. And what we've what we've pleaded here is that the Reverend Moon, who had sole control and authority over all of the property of the church and the corporations that he founded, designated his son Sean as the sole person to control those entities. And that is a matter of corporate law. He has the ability to do that. He is the sole, essentially the sole member of the corporation and can transfer that to his son. He didn't do that through documents. He did it orally for the most part, although there are there are proclamations that say so as well. So that's that's point one. Is it not the case that the Family Federation has no articles of organization or written bylaws governing its affairs? That's that's correct, Your Honor. And and isn't isn't it the case? And correct me if I'm wrong. I may have missed it, that the complaint and the briefs don't say anything about any Korean law that might govern the the organization of the Family Federation in the absence of those written documents. That's right, Your Honor, we think that the court can apply the laws of the United the HSA, UWC are established in New York. The Family Federation is a foreign nonprofit in New York, and we think the court can apply standard corporate law in New York to understand that. We also think the court can apply property law. These are these entities all formed by the Reverend Moon solely are the property of Reverend Moon, and he transferred that property to Sean. And there's no, I think, when you talk about property, do you mean the crowns and the ropes? What do you mean? No, I talk about it more broadly, Your Honor. I think that includes the corporate entities that he established. I think really, there's kind of a dual nature to the appointment that he made of Sean as the sole authority and his agent over these entities. They have a religious implication, but they also have a secular and neutral implication that involves corporations beyond simply the religious entity. And the Family Federation is an umbrella over a wide number of entities. And we think that under principles of corporate law and property law, the Reverend Moon, absent corporate articles and the like, to the contrary, had the sole authority to deliver those things to Sean, which he did here. And there's a debate in the briefs about whether the lack of corporate information is important. We think that weighs in our favor, Your Honor, because it demonstrates that there also are no religious doctrine that this court is being asked to interpret. Some of the questions you have might be sorted out in discovery. We haven't even had the chance to get there and figure that out because the court has decided that it's actually infringing on someone's constitutional rights to even let discovery proceed. And we don't think that's the case here. We also think... Let me ask Judge Bianco or Judge Newman if you have any questions for counsel. Well, Judge Newman, you seem to make the test of jurisdiction turn on whether there are neutral principles available. What do you do with the cases that seem to suggest that the abstention applies when the essential dispute is over leadership of a religious organization? I think, Your Honor, the best case to look at in that context is the Puri v. Calsa case out of the very similar to this one where the organizer of that particular religious viewpoint created a corporation and then said how that corporation would be governed in the future. They did it through corporate documents. That makes it a little easier to follow than this case. But I think that's our best example of where this court should go is... If there are no documents there and we don't, it doesn't sound like that's a very helpful case for you. Well, I think it is, Your Honor, because although the defendant there, well, the religious leader there, the yogi there, enshrined his decisions on how the organization should move forward in a corporate document, that doesn't preclude other ways of doing it. And that's one of the issues that would need to be sorted out is what is the effect of the Reverend Moon's decision in neutral law? If you don't have the corporate document, as that court apparently had, don't you then end up with our decision? I'm not sure I pronounced it correctly, but I'll try. Rehumamu against Coate, where we declined to get into issues of leadership, hierarchy, church administration, those matters. We just said we're not going to... We don't think we can do that. It's not a matter of our preference. It just is a religious issue of leadership, which you don't seem to reckon with other than to tell us about a Ninth Circuit court case that had a corporate document. So Your Honor, I think we reckon with it because what we're saying is the decision of the Reverend Moon and his statements that he is giving Sean the corporate – the leadership of the corporations – has the same effect as doing that through articles of incorporation. As I said, you're saying the absence of a corporate document is the same as the presence of a corporate document. That's a typical proposition. Once you don't have a corporate document, we're left to look at the various relationships among the people as to who is a leader. And that's the very thing that this Rehumamu court says you don't look at as a federal court. So Your Honor, I think I would distinguish it a little bit differently, and I would say that the lack of corporate documents doesn't mean – is not dispositive. It means that we need to do more work in the trial court to understand what it means. I would also say that you need to look at... Well, put it this way. What have you pled? Leaving aside, I think there may be a couple of counts that don't go off on ecclesiastical abstention, possibly the fiduciary count. So leaving aside accounts three and seven for a moment, what have you pled that gets you beyond a dispute about ecclesiastical leadership? Your Honor, I would point you to paragraphs 69 through 78 and 80 through 84 of our complaint. And I think that's exactly what the issue is. What I was getting to there is that the defendants here took corporate actions. As we say in paragraph 76, they took a vote to oust Sean as corporate directors. They forced his resignation as the leader of a corporation. And we think those types of actions are – while there may not be corporate documents to describe as well as we would want, but they voted, Your Honor. That would bring every church case back into federal court. All a plaintiff has to say is, yeah, I know it's a fight between two bishops or two rabbis, but take it from me, there's some corporate misfeasance going on here. And so let us in the federal court. You would bring every case back into federal court on that theory. All you got to do is say the word corporate and you're back in. I guess I would argue, Your Honor, that what we also can't have is all you have to do is say the word church and you're out. And that's what the court below hung up on and needs to do. Church or religion is in the First Amendment and corporate is not. So there's quite a difference. In any event, let's move on to something else. You have a couple of accounts that arguably don't turn on leadership, maybe the fiduciary account. As to the fiduciary account, what have you pledged that is a plausible basis that there exists a fiduciary relationship in the first place? Well, Your Honor, I also think that you'd look at our other accounts, including the whistleblower account, regardless of... Well, the first whistleblower account, you're bringing an account that predates the statute, aren't you? Well, we'd have to sort that out with the trial court. The trial court didn't even get to those issues. What's to sort out? We know the date of your allegation and we know the date of the statute. What do we need to sort out to know that at least your first count is before the date of the statute? On the whistleblower accounts, Your Honor, I think we have real questions. And as with anything with statute of limitations, you'd look at discovery and other exceptions. I think... Well, I started with fiduciary. Wait. You moved over to whistleblower rather deftly. Let's go back to fiduciary. What have you pledged that shows a fiduciary relationship? Thanks, Your Honor. I wasn't avoiding the fiduciary. I was simply pointing out other claims that I think stay in. So, the fiduciary relationship arises out of the defendant's positions as directors of the corporations and their duties to abide by the corporate doctrine as understood by this particular corporation. And of course, not to enrich themselves at the expense of the corporation or to defraud the corporation, all of which we've pled here. So, we think the duty arises in corporate law and we think we've adequately pled a breach of those duties based on the wasting of assets and the self-enrichment that leads to the whistleblower claim. Well, I understand you said you pled a breach of the duties. I was trying to understand where you pled the existence of a fiduciary duty to begin with. And I point back, Your Honor, to their duties as corporate directors. I see. Okay. Thank you. Judge Bianco, let me just follow up on some of the questions my colleagues asked you. It seems like that this leadership dispute is at the heart of each of the claims here, and you said something that I think both of my colleagues commented, but I just want to focus you on this, that in the absence of any corporate documents, that simply an oral pronouncement by Reverend Moon of who the leader is, is something that the courts should be involved in. And there is no basis for that in the law. That's exactly the situation that courts shouldn't be involved in. If there are no bylaws, articles of incorporation, any type of charter or governing document, that would be the way that courts would traditionally look. If a religious leader bestows leadership on another person simply orally, there's nothing that a court can look at other than to look into the religious traditions and procedures. And the only document you point to really is a proclamation that is religious in nature itself. So I'm not sure I really understand your argument that if there are no documents, this is perfect for a court to decide based upon Reverend Moon's oral statement of who the leader  is. What Your Honor is assuming is that because he is a religious leader, he's not able to do something that a non-religious leader could. If the father of a family told the rest of the family who led the family business that didn't happen to have corporate articles, this court would have to weigh in. There is no abstention in that context. That's the whole point. Religious groups are different. The whole point of the doctrine is that we won't weigh in unless there is something beyond just what a religious leader says to another person within the religious group. But give me the pure case, if that's the closest case that you have, that's so far from what we're talking about here. That involved corporate entities. The dispute was over two non-profit corporate entities. The board members had no ecclesiastical duties. The entities were not themselves. That is so far from what you're alleging here, which is who is the leader of the church. What case do you have anywhere, anywhere where a court has weighed in on who the leader of a church is? Which case? Any case in the history of the United States, give me a single case where a court has weighed in on who the leader of a church is. Your Honor, yes. I go back to Puri. I don't disagree with you that if this court sees the controversy as the only question in this case being who leads the church, we have an issue with the First Amendment. At that point, an Article III branch of government is infringing. You said it's about property, but who has the property depends on who the leader is. Whether or not they were stealing or not depends on who the leader is. All those things, the premise that the court had to decide to reach all these issues that you're saying the case is about, you have to first decide who the leader is, right? Your Honor, I think I would go back to what I mentioned earlier, which is that I think these things can have and do have dual purposes and dual understandings here. I think that this is a family dispute as well as having religious implications. I take the family dispute first. I think that's really where the focus of this case is, is where does the father want the leadership of his property, not just robes and the like, but also his entities to be vested. I think this court can look at that in a non-religious context. I think the question certainly should be explored more in discovery. I don't think that we're asking the court to determine merely, or I shouldn't say merely, but only the leader of the religious entity, but all of the entities under the family federation. I also think that I'd be remiss if I didn't have a chance to mention this, that the courts have never said that there cannot be a fraud exception. In fact, the courts always look to see, I think, since the Serbian Church case, if there is fraud that occurred here. I think we've adequately pledged that such that the court needs to do more work before we reach this question. Okay. Thank you. Thank you, Mr. Herzog. You'll have two minutes in rebuttal. We'll now hear from Ms. Ferguson, who will have two minutes of uninterrupted argument, and then we will proceed with questions. Good morning, Your Honors. May it please the Court, this is Laura Ferguson for Appalese. Seven years after Reverend Moon's death, one of his sons, Sean Moon, filed this lawsuit asking a federal court to declare him, and not Reverend Moon's widow, the successor of Reverend Moon and leader of the Family Federation and the Unification Church. It is hard to imagine a case that falls more squarely within the First Amendment ecclesiastical abstention doctrine than this one. That doctrine unequivocally prohibits civil courts from picking winners and losers in church leadership disputes. The Supreme Court has repeatedly held that courts must abstain from deciding ecclesiastical disputes, especially when they involve church governance. In Kedroff, the court held that religious organizations must have the power to decide for themselves, free from state interference, matters of church government. In Serbian Orthodox, the court held that courts may not be immersed in church disputes over church policy and church administration. According to the court, the composition of church hierarchy is at the core of ecclesiastical concern. And in Hosanna Tibor, the court categorically stated the courts can have no role in filling ecclesiastical offices. And finally, Serbian Orthodox tells us that the applies even if the plaintiff alleges the church should not follow its own policies and procedures, and even if the governance dispute is associated with a collateral dispute over property and assets. Mr. Herzog claims this is a dispute over corporate control, but in fact, the complaint indicates that Mr. Moon is seeking a declaration that he leads the Unification Church and the Family Federation. He's not asking to be restated to particular board positions. The complaint alleges that the Unification Church is a religious denomination at paragraph 32. It alleges that the Family Federation is the authoritative religious entity that directs Unification Churches worldwide. He's asking to be declared the leader of a church. On appeal, he attempts to recast his lawsuit as a property dispute, but the complaint does not allow that recharacterization. Throughout the complaint, his claims of entitlement to church property all rest on his allegation that he's the rightful leader of the church. For example, in paragraph 2 of the complaint, he alleges he was deprived of property he is entitled to as leader. In paragraph 53, he alleges the Crown couldn't decide the leadership position to which he was appointed. For relief, he seeks an order requiring all property and assets being improperly held to be returned to the church as a rightful leader. These property claims cannot be resolved using mutual principles of law because they require the court to first determine who is the leader of the church, and the First Amendment precludes the court from making that determination. I think it's important to note that serving Orthodox, which is controlling here, also involved a property dispute, but the Supreme Court held that the ecclesiastical abstention doctrine nonetheless applied because the resolution of the church governance dispute determined control of the church property, and the same is true here. Do you disagree with the idea that if there's a claim or a question which we could resolve using neutral principles, we would have jurisdiction to do that even if the plaintiff has raised other claims we cannot resolve using neutral principles? Yes, Your Honor. If there is a particular claim that could be decided using neutral principles that did not also require the court to resolve issues of church governance or theology, the court can decide the issue even if a party happens to be a church, but that's not the case with any of the claims here. Your view that in this case, none of the claims fall into the category of claims that can be resolved using neutral principles? Every single claim hinges on Mr. Moon's allegation that he is the leader of the church. For example, in his defamation claim, he says he was defamed when a church official stated that he wasn't the proper leader, so because truth is a defense to defamation, the court, to decide a defamation claim, would have to decide if Mr. Moon is the proper leader. He claims that there was a RICO conspiracy to remove him as leader, that various defendants breached their fiduciary duty to him, and we certainly do not agree that they owed a duty to him, but that they breached their duty to him because they didn't recognize him as leader. Every single claim, as the district court analyzed, hinges on recognizing Sean Moon as a leader and viewing the church's current leadership as illegitimate. What about the whistleblower protection aspect of the case? Are there any neutral principles that can be applied in that with respect to the whistleblower? Well, I think the simplest way to look at the whistleblower claim is that it's an employment claim, and I mean, there's certainly factual questions about who Mr. Moon claims his employer was and to whom he made his whistleblower claims, but the Supreme Court has addressed this issue in its jurisprudence on the ministerial exception, and most recently in Our Lady of Guadalupe School, which was decided in July 2020. That's after the brief with 140 Supreme Court 2049, and the court held that, I'm quoting, courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions. So the ministerial exception, which is a facet of the ecclesiastical abstention doctrine, dictates that courts cannot resolve employment disputes, and a whistleblower claim would be that kind of dispute if it involves individuals holding important positions within the church. And in any event, there's only one party who potentially could be a whistleblower descendant in this case, and that's Holy Spirit Association for the Unification of World Christianity USA, which is a nonprofit corporation. Mr. Moon alleges he was removed from a position in that organization, but that, as the court noted, happened before the statute became effective. Family Federation, as we demonstrated in Exhibit 1 to our motion to dismiss, is not a corporation, and so cannot be a whistleblower defendant. But in any event, the court can't resolve employment disputes involving senior church leaders. Counsel to Judge Newman, how does his leadership, why is leadership essential to his 12th count asking for an accounting? Why isn't that just a pure financial allegation? Maybe not well pleaded, but what has it got to do with leadership? Because he is claiming that he's entitled to that accounting and return of assets based on his claim that Mrs. Moon and the other defendants have wrongfully wrested control of the church from him. I mean, he has no standing to seek an accounting other than his claim that he's the leader of the church. I'm happy to... Well, is that what he pled? I'm not sure his pleading quite follows that track. I can only claim his as a leader, but I'm not sure that's what he alleges. It may be he hasn't properly pled a constructive 12th count, but that would be 12B6. So I would draw your attention, Your Honor, to appendix page 38, which is the count 12, accounting, paragraph 271. Upon information and belief, Mrs. Moon and the director defendants have unlawfully seized and exercised dominion over Family Federation and HSAEWC USA's property, financial accounts, and other assets. As paragraph 274, as leader of the Unification Church and Family Federation, Sean Moon has an interest in preservation of the organization's property and I can briefly turn to the fraud exception, if that's helpful. Ms. Ferguson, this is Judge Bianco. I wanted to ask you about the whistleblower statute. I just wanted to follow up on what Judge Katzman asked you about. I understand the points you made towards the latter end of your response, but I just want to go back to your first point, because I think you're reading the case law too broadly. You're suggesting that if someone is employed by a some improper conduct, whether it be abuse or some type of fraud that's unrelated to leadership or some type of religious principle, you're suggesting that that employee, because it's a religious organization, has no whistleblower protection? Is that what you're suggesting? Well, under the ministerial exception, the religious employee has no protection if they're subject to employment discrimination. So the ministerial exception is an exception to Title VII protections. And I think the court's rationale in Havana Table War, and more recently in Our Lady of Guadalupe School, I think would apply to... You're suggesting Title VII does not apply to employees of religious organizations at all? They have no protection under Title VII? That's the ministerial exception. If they serve any sort of religious function. But what if they have a dual function? So that was the entire focus of Our Lady of Guadalupe School, which was decided in July 2020. It was trying to sort out that issue. I'm not sure we need to reach that issue, but... Right. I mean, where the court came out is that if, for example, a religious teacher plays a role that is ecclesiastical within the organization, then the ministerial exception would apply, even if that teacher isn't a minister. All right. Thank you. I think the argument, though, that even if we could evaluate whistleblower claims with a reference to religious doctrine, that we should affirm the dismissal on grounds that the complaint didn't adequately allege what law or adopted policy of the federation were violated by the officials, or what fraud they committed in paying themselves excessive salaries. So, again, the Family Federation would not be subject to the New York whistleblower statute because it's not a corporation. The only defendant to the whistleblower claim that is a possible defendant under the whistleblower statute is the U.S. Church, and Mr. Moon was removed from his position at that church before the New York whistleblower statute took place. Thank you. We'll hear from Mr. Herzog, two minutes in rebuttal. Thank you, Your Honor. To follow up on Judge Bianca's point, I think my colleague reads Our Lady of Guadalupe II broadly. I don't think it stands for the idea that if an employee or other, leader of a church sees misconduct or fraud or wasting of corporate assets or stealing of corporate assets, that somehow the church can punish them and retaliate against them without sanction by a court. The First Amendment has never been read that broadly, and I don't think Our Lady of Guadalupe goes that far either. When do you say the retaliation occurred? Was that February of 2013? It occurs, Your Honor, when he is removed from all of his positions within the Family Federation and the U.S. entity, yes. And your complaint says February 2013, does it not? I believe that's when the removal occurred. He exposed the misdeeds in January of 2015 under paragraph 260 of our complaint. But he was removed in 2013? Yes, Your Honor. And the statute was passed in 2014, wasn't it? Or it took effect then? Yes, Your Honor. So how did he get to sue under a statute that is in effect? Well, I think we'd have questions about, and I think it's something that we need to deal with in discovery, about the removal and his report of the misdeeds in January of 2015. I also think the trial court didn't have enough... It's not the reporting. Your claim is the retaliation is the violation of the whistleblower statute. That's your claim. That's what you pled. Yes, Your Honor. And that preceded the statute, right? It did, Your Honor. We also plead in paragraph 2263 that he was suspended from his role as international president in February of 2015. So I think we would have the need for discovery to sort out whether that is actionable under the statute. I'd like to, if I may wrap up on a point I started with, which is that I think one of the issues the court has to wrestle with here is the fact that this is being litigated in other courts and that the Family Federation, the defendant here, and the underlying HSA-UWC-USA has been using the ecclesiastical abstention as both a sword and a shield. I think it says a lot about what the intent of the parties within these organizations truly is if they are using ecclesiastical abstention only where it suits them. If the case is that – the D.C. case is the one I'm thinking of most particularly that has gone through trial now. The Family Federation fought application of the ecclesiastical abstention doctrine in an issue involving, as the amicus here explains, leadership of some of these very same organizations. And so in the absence of some of the corporate formalities and documents that we discussed earlier, you do have evidence of what the parties really think about how these disputes should be resolved. And how they think they should be resolved is in the federal courts and the state courts of the United States. All sides of this dispute have come to these courts to resolve different parts of the internal family dispute. And I think the court can either through the estoppel theory or – Can you hear me? Can you hear me? Thank you for your argument. We have your point. Thank you so much. Thank you, Your Honor. I could not hear you. I apologize. Thank you.